IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GISELA VELEZ-RAMIREZ,** <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMONWEALTH OF PUERTO RICO, et al.** <br><br> **Defendants.** | **CIVIL NO. 12-1210 (PAD)** |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Gisela Vélez-Ramírez provided services under contract at the Bayamón Correctional Complex in Puerto Rico. The contract, however, was not renewed. Vélez then sued the Commonwealth of Puerto Rico, the Department of Corrections and Rehabilitation ("DOCR"); the Correctional Health Services Corporation ("CHSC"); and the Secretary of the CHSC, under Federal and Puerto Rico law.[1]

Defendants denied liability and moved for summary judgment (Docket Nos. 127 and 129). Plaintiff opposed their request (Docket Nos. 139 and 144). Defendants replied and plaintiffs surreplied (Docket Nos. 155, 156, 164, and 167). For the reasons explained below, the summary judgment motions are GRANTED and the case DISMISSED.[2]

**I.   STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to

---

[1] The American with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, et seq.; Puerto Rico Law No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1 § 501; Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §§ 185(a), et seq.; and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141 (Docket No. 1).

[2] At Docket No. 49, the Court dismissed the Law No. 44, Law No. 80, and Article 1802 claims against the Commonwealth. At Docket No. 51, it dismissed the Article 1802 claim against CHSC.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 2 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 2

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial.  Mesnick v. General Electric Co., 950 F. 2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  It is "material" if it potentially affects the outcome of the case in light of applicable law.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Insurance, 43 F.3d 723, 725 (1st Cir. 1995).  All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013).  Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 3 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 3

## II.    RELEVANT FINDINGS OF FACT[3]

### A.  Management Agreement between DOCR and CHSC

DOCR operates adult correctional institutions in Puerto Rico.  CHSC is a nonprofit corporation created under the laws of Puerto Rico. See, Docket No. 127, CHSC's Statement of Uncontested Material Facts ("CHSC's SUMF") at ¶ 4.  On August 22, 2005, they entered into a "Comprehensive Management Agreement for the Provision of Healthcare Services to the Correctional Population under the Custody of the Administration of Corrections." CHSC's SUMF at ¶ 5.

Under the Agreement, CHSC would manage DOCR's Correctional Health Program ("Salud Correccional" or "CHP"),[4] a subdivision of the DOCR in charge of providing medical and mental health care of the correctional population in the custody of the DOCR.  CHSC's SUMF at ¶ 3; see also, Docket No. 128, DOCR's Statement of Uncontested Material Facts ("DOCR's SUMF") at ¶ 5.

To that end, Article 3.1.2 of the Agreement states that CHSC's would be responsible for: "[i]mplement[ing] a cost effective and efficient model for the delivery of health services that provides for the needs of the correctional population in a multi-disciplinary and integrated

---

[3] Plaintiff objects to DOCR's and CHSC's Statements of Fact that are supported by her own deposition and the deposition of Lisandra Pacheco (a DOCR Administrative Technician who worked with the contract renewal process).  In particular, she claims that defendants failed to authenticate their deposition testimony as they did not submit, with the deposition excerpts, the court reporter's certification that they were dully sworn and that the deposition is a true record of the testimony of the deponent. See e.g., Plaintiff's response to DOCR's SUMF ¶¶ 4, 7, 14-19, 21, 22, 26-31, 41-45, 56-60, 63-104, 109-115, 118-121, 124-131 and CHSC's SUMF ¶¶ 15-52, 55-58, 62, 64-69, 75, 76, 79-84, 86-88, 90-92, 95-123, 125, 126, 128-131, 133-135, 137, 139-153, 155-158, 160-178, 182-184, 187 and 197.  Defendants, in turn, insist that there is no dispute that the certification exists and that it would be used at trial and plaintiff herself used deposition testimony from the depositions she is now contesting.  The Court need not tarry long here as a perusal of the record confirms that Vélez has offered and properly authenticated the depositions of the same individuals, thereby providing the basis for their admissibility. In fact, in many instances, plaintiff supports her response to defendants' statements of uncontested facts with the depositions she also objects.

[4] Under Executive Order No. OE-2005-49 of July 30, 2015, the CHP was transferred to DOCR.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 4 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 4

approach, including the delivery of services in the appropriate levels of treatment with emphasis on continuous care." CHSC's SUMF at ¶ 6.

To perform its obligations, Article 9 specifies that CHSC would use the services of CHP's regular and transitory employees and contractors, "provided they meet the requirements associated with their respective positions." These employees would work at DOCR's medical facilities "under supervision and/or direction of CHSC," but would ". . . continue to be considered employees and contractors of [DOCR] until such time the employer-employee or contractual relationship is terminated or modified for whatever reason." CHSC's SUMF at ¶ 7 and DOCR's SUMF at ¶9.[5]

The Agreement further provides that CHCS would exercise full supervisory authority over the DOCR's regular, transitory employees and contractors, including supervising, overseeing, directing and managing all DOCR's employees and contractors and recommending hiring, terminating, promoting, demoting, disciplining and/or transferring said employees. CHSC's SUMF at ¶ 7 and DOCR's SUMF at ¶ 11.

### B. Plaintiff's Contract

Vélez is a health educator licensed by the Health Department. CHSC's SUMF at ¶ 15. She has been a Type II diabetic for the past 25 years, but was diagnosed with Diabetic Retinopathy in 2007. CHSC's SUMF at ¶ 95. On July 1, 2009 she entered into Professional Services Contract No. 2010-000203 with the DOCR. CHSC's SUMF at ¶ 16; see also, Docket No. 137, Exh. 23 and DOCR's SUMF at ¶ 32.

---

[5] Article 9.3 also prohibits CHSC from hiring current DOC's regular, transitory or contractors to work as CHSC's employees without DOC's prior consent.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 5 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 5

The Contract was valid from July 1, 2009 to June 30, 2010. Id. It did not name CHSC as a party. CHSC's SUMF at ¶ 16 and Docket No. 137, Exh. 23. Under the contract, Vélez would provide Training and Professional Development Coordinator services as an independent contractor to DOCR in the Bayamón Correctional Complex. Id.[6]

### C. Medical Condition and Reasonable Accommodation Forms

Around January 2010, Vélez requested from Lisandra Pacheco of DOCR, forms to apply for reasonable accommodation. Pacheco sent her the documents via e-mail. Since the documents were too small for Vélez to fill out in her handwriting, she contacted Sandra Vázquez of CHSC's Human Resources, who sent Vélez another copy by messenger. CHSC's SUMF at ¶ 102.

In February 2010, Vélez returned the completed forms to DOCR. CHSC's SUMF at ¶ 106. According to the forms, she needed audiovisual equipment, equipment to be adapted to the computer, and occasional personnel assistance. CHSC's SUMF at ¶ 107.

In February 2010, Vélez underwent a Laser 360 proceeding in her right eye. A second Laser 360 proceeding was performed in her left eye two (2) to five (5) days later. CHSC's SUMF at ¶ 104. After the Laser 360 procedure, Vélez could not see 20/20 with eyeglasses, something she did not expect. CHSC's SUMF at ¶ 105.

### D. Transmittal

From mid-February 2010, Vélez has not worked. CHSC's SUMF at ¶¶ 123, 130, 134 and 143. Around March 2010, Mabel Medina (CHSC's Professional Development and Training Manager) called her to ask how she was doing, and asked when she would return to work. Vélez

---

[6] Although Vélez admitted this statement, she questions her relationship with CHSC claiming that she was an employee, not an independent contractor, and that CHSC and DOCR are joint employers. This qualification does not contest the fact stated.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 6 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 6

indicated that the intervention had not gone as expected, that they had to repeat it, and she was in an evaluation and recuperation process.

During this conversation, Vélez informed Medina that she had requested an accommodation, of which Medina was not aware. CHSC's SUMF at ¶ 121. By letter dated April 30, 2010, Lourdes M. Echevarría (CHSC's Human Resources Corporate Director), informed Vélez that the request for accommodations had been denied because she was an independent contractor. CHSC's SUMF at ¶ 125.

### E. Contract Renewal

In order to renew a professional services contract, the DOCR must review the contractors' documents and credentials. CHSC's SUMF at ¶ 65. On May 12, 2010, Pacheco sent to all professional services contractors an e-mail communication via DOCR's intranet, informing them that the deadline to submit the required documents was June 2, 2010.

On May 18, 2010, Pacheco sent copy of this communication to Vélez via DOCR's intranet, thinking that Vélez would see it upon her return.[7] The same day, she sent Vélez and all other contractors another e-mail via the intranet requesting that they update their contact information. CHSC's SUMF at ¶ 133.[8] She did not, however, receive any documents from Vélez for the contract renewal process. CHSC's SUMF at ¶ 142. Vélez professional services contract was not renewed. CHSC's SUMF at ¶ 141.

---

[7] Pacheco never received any communication from Vélez or on her behalf, requesting that any communication with or to Vélez be through Vélez' cellphone or through Vélez' personal e-mail. CHSC's SUMF at ¶ 134.

[8] Even though Vélez qualified this statement, she only explained that Pacheco knew that Vélez had no access to the intranet and, thus, that they should have contacted Vélez by other means so that she could have access to this communication (POSMF at ¶ 133). She did not, however, create a disputable issue of fact as to this statement. Thus, it remains uncontested.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 7 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 7

Vélez knew that Pacheco was the person she had to contact for purposes of the contract renewal process (CHSC's SUMF at ¶ 66); what documents she had to submit as part of the process; and when she had to submit the documents (CHSC's SUMF at ¶ 67).

### F. Vocational Rehabilitation Services

The Vocational Rehabilitation Administration of the Puerto Rico Department of Labor and Human Resources ("VRA"), is the local agency responsible for administering the Federal Vocational Rehabilitation Program in Puerto Rico. See, Law No. 97 of June 10, 2000, P.R. Laws Ann. tit. 18 §§ 1064-1070.

The Program provides vocational and rehabilitative services to individuals with a disability to help them prepare for, obtain, maintain or regain employment, consistent with the parameters of the "Rehabilitation Act of 1973," 29 U.S.C. § 701, as amended. To qualify for benefits, the individual must fill out an application and undergo an interview process.

In May 2010, Vélez applied for and was found eligible to receive program benefits. In the application, she specified that she could not work ("Reason for leaving job: Condition prevented me from doing job") (Docket No. 127, Exh. 27 of Plaintiff's deposition attached as Exh. 7C of CHCS' motion for summary judgment).[9] From May 2010 to August 2010, she waited for the Vocational Rehabilitation Administration to contact her.

---

[9] Vélez has challenged the admissibility of the benefits application arguing that (1) it is not a material fact in connection with her claims for discrimination and retaliation; (2) it does not represent her medical condition during her employment and was not considered by the employer at the time of the alleged discriminatory action; and (3) it is inadmissible hearsay (Docket No. 137, Attachment 1, Plaintiff's Response to CHCS's SUMF ¶ 154). As discussed later in this Opinion and Order, the application is relevant to determine whether Vélez qualifies for statutory protection under the ADA and the Rehabilitation Act. Similarly, it is contemporaneous with the events here for it was completed and signed on May 5, 2010, at mid-point between the letter of April 30, 2010 and the June 30, 2010 contract expiration date. It is admissible as a statement by a party-opponent under Fed.R.Evid. 801(d)((2)(A). Accordingly, CHCS's SUMF ¶ 154 is considered admitted.

From around August 2010 to March 2011, Vélez received rehabilitation services from the Administration, taking classes on different subjects. She could not look for a job because she had to complete the rehabilitation course. In April 2011, the Administration referred her to the rehabilitation job search process. She did not communicate with DOCR or CHSC to inform them that she was eligible to receive rehabilitation services or had been referred to the rehabilitation job search process (CHCS's SUMF at ¶¶ 165-173).

### G. Proceedings before the EEOC

In a letter dated February 18, 2011, Vélez, represented by counsel, requested from the Equal Employment Opportunity Commission a determination that Vélez was discriminated against on account of her disability. She listed DOCR and CHSC as employers, and contended defendants had refused to provide reasonable accommodation for her vision problem claiming she was not an employee but an independent contractor. Docket No. 137, Exh. 30.

The letter referred to Charge No. 515201100182. Id. On November 8, 2011, she formalized the charge, alleging that the earliest discrimination took place on February 12, 2010 and the latest on June 30, 2010 (Docket No. 127, Exh. 28). Copy of the charge was sent to the "Administración de Corrección [DOCR], Oficina de Asuntos Legales, PO Box 71308, San Juan, P.R. 00936. Id.

On November 28, 2011, the EEOC sent to the Puerto Rico Department of Labor-Antidiscrimination Unit a notification regarding Vélez's Charge. CHSC's SUMF at ¶ 192; see also, Docket No. 127, Exh. 30. The communication reflected November 8, 2011 as "Date of Receipt", and identified "Administración de Corrección" (DOCR) as "Respondent". Id. On

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 9 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 9

December 28, 2011, the EEOC issued a Notice of Right to Sue. CHSC's SUMF ¶ 197, notifying CHSC with copy of the Notice. CHSC's SUMF ¶ 198.

### III.  DISCUSSION

### A. ADA

#### (1) Threshold Issues

The ADA covers employees rather than independent contractors.  Alberty-Vélez v. Corporación de P.R. para la Difusión Pública, 361 F.3d 1, 11 (1st Cir. 2004); Dykes v. DePuy, 140 F.3d 31, 38 (1st Cir. 1998).  It requires a plaintiff to file a charge with the EEOC within the period specified in the statute.  Bonilla v. Muebles J.J. Álvarez, 194 F.3d 275, 277-278 (1st Cir. 1999).

The parties vigorously contest whether Vélez was an employee; and dispute whether she timely exhausted administrative remedies with the EEOC.  The Court will assume, *arguendo*, that Vélez was an employee of the defendants and complied with all applicable statutory exhaustion requirements.

#### (2) Discrimination

The ADA makes it illegal for employers to discriminate against employees because of disability. 42 U.S.C. § 12112(b)(1); Collazo-Rosado v. University of Puerto Rico, 765 F.3d 86, 92-93 (1st Cir. 2014).  Plaintiff alleges defendants violated ADA by not providing her with reasonable accommodation and in not renewing her contract.  The ADA's discrimination provision extends to "qualified individuals" with a disability.  42 U.S.C. § 12111(8).  To be considered qualified, the employee must be capable of performing the essential functions of the position with or without accommodation.  29 C.F.R. § 1630.2(m).[10]

---

[10] For this reason, qualification is a condition without which the antidiscrimination provision of the statute does not generally apply. See, John J. Coleman III, Disability Discrimination in Employment, § 2:3, 2-14 (Thomson 2014) (commenting that the ADA's §

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 10 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 10

Vélez was not qualified. Although she has a disability, she has not worked since mid-February 2010 and certified in the application for vocational rehabilitation benefits in May 2010 that her condition prevented her from doing her job.[11] Beyond the apparent lack of qualification, her contract was not renewed because she did not submit the required documentation. Lack of required documentation to renew a contract is a legitimate ground for not renewing it.

Vélez alleges that when she received the letter denying the request for reasonable accommodation, she interpreted the letter as one of termination. The letter does not state that Vélez' services or contract had been terminated, that she could not continue providing services, or that the contract would not be renewed.[12] As such, it cannot be reasonably interpreted the way Velez did so.

After receiving the letter Vélez had nearly two (2) months left to submit the required renewal documents, but never did so. She has produced no evidence that DOCR renewed the contract of any other similarly situated professional services contractor who had failed to present the required contract renewal documents by June 2010, so as to give rise to a genuine disparate

---

102(a) only prohibits discrimination against a qualified individual); Robert L. Burgdorf Jr., Disability Discrimination in Employment Law, 190 (BNA Books, 3d Ed. 1997)(same). The instances where applicants and employees other than qualified individuals are nevertheless protected by Title I of the ADA are association with a disabled person, 42 U.S.C. §12112(b)(4), restrictions respecting medical inquiries, 42 U.S.C. §12112(c), and as discussed later in this Opinion, retaliation. See, John J. Coleman III, supra at pp. 2-14, 2-15 (so noting).

[11] Vélez states that the certification is truthful only as to performance without reasonable accommodation (Docket No. 137, Exh. 1, Response to CHCS's SUMF ¶ 154 at p. 166). Her oppositions to defendants' motions for summary judgment have 52 pages (Docket Nos. 139 and 144), her response and counterstatement of material facts to CHSC's statement of uncontested facts has 231 pages with 194 additional statements (Docket Nos. 137, Exh. 1), and her response to DOCR's statement of uncontested facts and counterstatement has 160 pages with 194 additional statements (Docket No. 139, Exh. 1). Additionally, she filed surreplies (Docket Nos. 164 and 167), and responded to a reply to one of her surreplies (Docket No. 187). Yet nowhere has she explained why she did not specify in the application that the certification she was making – one of a factual nature – was truthful only insofar as it related to performance without reasonable accommodation.

[12] Clause 8 of Vélez' contract provides that abandonment of services would be considered sufficient cause for immediate termination. See, CHSC's SUMF at ¶ 54. There is no evidence that defendants ever invoked this contractual clause.

treatment issue. Drawing all reasonable inferences in her favor, it is not feasible to conclude that she was illegally discriminated against in violation of the ADA.

### (3) Retaliation

Vélez alleges that as a result of her request for reasonable accommodation, defendants retaliated against her by terminating her contract and refusing to renew it. The ADA makes it unlawful for employers to retaliate against someone who engages in statutorily protected activity. 42 U.S.C. § 12203(a); Collazo-Rosado, 765 F.3d at 93. A plaintiff may assert a retaliation claim even if she is unsuccessful on a disability discrimination claim. Colón-Fontanez v. Municipality of San Juan, 660 F.3d 17 (1st Cir. 2011).

To establish a claim of retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action." Collazo-Rosado, 765 F.3d at 93. If she makes this showing, the burden shifts to the defendants to offer a legitimate non-retaliatory reason for their actions, and then back to her to show that the reason was a mere pretext. Id. To establish pretext, she must show that the explanation was a lie intended to cover up retaliation. Id.

It is undisputed that Vélez engaged in protected activity, for requesting an accommodation is protected conduct. But going directly to the employer's reason for the challenged action, Vélez never submitted the documents needed for the contract renewal process, nor did she make any attempt to contact the official in charge of the process. That was so, even though she knew (1) that documents needed to be submitted for the contract renewal process; (2) what those documents

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 12 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 12

were; (3) when those documents were due; and (4) the person to whom the documents had to be submitted.

As stated earlier, lack of required documentation to renew a contract is a legitimate ground for not renewing it. Vélez has not demonstrated that the purported employer acted for a different reason or that any such reason should be construed as a sham intended to cover up retaliatory motive(s). In these circumstances it cannot be concluded that defendants incurred in any retaliatory conduct against Vélez in violation of the ADA. See, Collazo-Rosado, 765 F.3d at 93-95 (summary judgment dismissing ADA retaliation action predicated on defendant's decision not to renew plaintiff's contract).

**B. Rehabilitation Act**

Vélez alleges defendants violated Section 504 of the Rehabilitation Act. Section 504 provides that no otherwise qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" receiving federal funds. 29 U.S.C. § 794(d).

A *prima facie* case under the Rehabilitation Acts ". . . mirrors that under the ADA, with only one relevant exception: Under the Rehabilitation Act, [p]laintiff must show that she was excluded solely by reason of his disability." Dunning v. War Memorial Hosp., 534 Fed.Appx. 326, 333 (6th Cir. 2013). Because the Court has already concluded that plaintiff failed to establish a viable claim under the ADA, it is apparent that her action under Section 504 fails as a matter of law and must be similarly dismissed.

Case 3:12-cv-01210-PAD   Document 193   Filed 03/31/15   Page 13 of 13

Vélez-Ramírez v. Commonwealth of Puerto Rico, et al.
Civil No. 12-1210 (PAD)
Opinion and Order
Page 13

### C. Supplemental Local Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original jurisdiction are dismissed. See, 28 U.S.C. § 1367(c)(3)(so specifying). Since the federal claims will be dismissed, the remaining state claims will be dismissed, albeit without prejudice. Boche v. John Hancock, 81 F.3d 249, 256-257 (1st Cir. 1996); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

### IV. CONCLUSION

For the reasons stated above, defendants' motions for summary judgment (Docket Nos. 127 and 130) are granted. Plaintiff's ADA and Rehabilitation Act claims are dismissed. Claims under Puerto Rico law are dismissed without prejudice.

Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2015.

                                                       s/Pedro A. Delgado-Hernández
                                                       PEDRO A. DELGADO-HERNÁNDEZ
                                                       United States District Judge